# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER BRUNELLE, et al.,** | : | **Civil No. 3:15-cv-960** |
| | : | |
| **Plaintiffs** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF SCRANTON, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

## I.    INTRODUCTION AND FACTUAL BACKGROUND

This case arises out of a longstanding dispute between a real estate contractor and developer, the City of Scranton, the Director of the city's Department of Licensing, and a city housing inspector.  The plaintiff, Alexander Brunelle, has brought this action on his own behalf and on behalf of a number of Limited Liability Companies[1] he controls which hold certain of his real property in Scranton, alleging that the defendants violated a number of his constitutional rights by subjecting him

---

[1]   Aside from Brunelle, the plaintiffs include Dunmore Exclusives, LLC; 1137 Albright LLC; 833 Fig LLC; 223 East Mountain LLC; 421 South Main LLC; 718 Pittston LLC; 544 Hemlock LLC; 150 South Sumner LLC; 506 Lackawanna LLC; 800 Electric LLC; 701 Moosic LLC; and 530 South Irving LLC.  For ease of reference, unless discussing a specific property, the plaintiffs shall be referred to either as "plaintiff" or "Brunelle" in this memorandum.

to illegal and arbitrary actions allegedly taken relative to the plaintiff's business activities and properties.

Brunelle commenced this case originally by filing a complaint on May 15, 2015. (Doc. 1.) He subsequently filed an amended complaint, (Doc. 28), which represents a detailed, 67-page, 273-paragraph pleading. (Doc. 28.) In it, Brunelle provides a lengthy factual recital describing a pattern of allegedly discriminatory conduct by the defendants targeting properties that the plaintiff owns. (Id. ¶¶ 30-195.) According to Brunelle, the defendants targeted at least eleven properties that he owned, and engaged in a wide array of discriminatory practices. (Id.) Thus, Brunelle alleges that the defendants singled him out for discriminatory non-traffic criminal citations, issuing more than 150 baseless criminal complaints against Brunelle and his properties in the city. (Id. ¶ 194(e).) Brunelle also alleges that the defendants issued baseless condemnation orders on various properties that he owned, condemning properties even after they had been inspected and approved for occupancy. (Id. ¶¶30-195.)

Brunelle further avers that defendant Patrick Hinton, the Director of the City of Scranton Department of Licensing ("Hinton"), and Patricia Jennings-Fowler ("Fowler"), a housing inspector for the city, issued arbitrary, contradictory, and peremptory directives to the plaintiff which stymied efforts to renovate, market, and rent these properties. For example, according to Brunelle, with respect to a property

the plaintiff owned on Lavelle Street in Scranton, in April of 2014 defendant Fowler simultaneously served stop-work and mandate orders on the property. The stop-work order required the plaintiff to cease operations immediately; the mandate order required him to correct deficiencies at the property immediately. By issuing both orders simultaneously, Brunelle asserts that the defendants "put Plaintiff in an absurd situation as Plaintiff was prohibited from working on the property pursuant to the Stop Work Order but simultaneously required to address the alleged trash and sanitation violations immediately." (Id. ¶ 143.)

The complaint further avers that the defendants have issued demolition orders to arbitrarily frustrate Brunelle's business endeavors. Specifically, Brunelle contends that the defendants issued demolition orders on the properties acquired by the plaintiff in December 2014, thus preventing the plaintiff from making any improvements or renovations to the property, but had yet to act upon these demolition orders as of June, 2017. (Id. ¶¶ 167-77.) Brunelle further asserts that the defendants have arbitrarily denied licenses and permits to the plaintiff's brother, Theodore Brunelle, who served as an independent contractor on many of the plaintiff's renovation projects in order to deter and frustrate those projects. (Id. ¶ 194(d).)

According to Brunelle, many of these actions have been taken by the defendants without affording Brunelle any notice or opportunity to respond to the

alleged deficiencies that had been identified.  (Id. ¶¶ 30-195.)  Moreover, Brunelle

claims that both Fowler and Hinton have made statements which confirm their

discriminatory bias against the plaintiff, including allegedly informing the plaintiff's

employees that their actions are designed to send a message to the plaintiff, or deter

the plaintiff and his family members from filing lawsuits.[2]  (Id. ¶¶ 190, 194(b).)

Brunelle specifically alleges that Defendant Fowler has engaged in disparate

and discriminatory enforcement actions targeting his properties, by describing a

pattern of disparate code enforcement by Fowler as compared to all other city

inspectors.  (Id. ¶¶ 30-40.)  Finally, Brunelle alleges that this pattern of unlawful and

discriminatory conduct increased after the plaintiff filed his initial complaint in

federal court.  (Id. ¶¶ 194(a)-194(i).)  Furthermore, according to Brunelle, a city

employee informed one of the plaintiff's employees:  "that Patrick Hinton had

instructed that no permits were to be issued for work by Theodore Brunelle while

his brother Alexander Brunelle's lawsuit was pending in Federal Court."  (Id. ¶

194(d).)

Set against the backdrop of these well-pleaded facts, Brunelle brought eleven

separate claims against the defendants.  Six of the counts allege federal constitutional

---

[2]  By way of example, Brunelle has submitted evidence that would show that
Hinton informed Elizabeth Root, an office manager for one of the plaintiffs, that he
"threatened to condemn the buildings to send a message to Alex."  (Doc. 28, Am.
Compl., Ex. Z-23 at 6.)

infractions. Specifically, Brunelle alleges that the conduct of these officials: (1) denied the plaintiff procedural due process (Id., Count 1 ¶¶ 195-20); (2) constituted a substantive due process violation (Id., Count 2, ¶¶210-215); (3) violated Brunelle's right to equal protection under the law (Id., Count 3, ¶¶ 216-26); (4) was taken in retaliation against Brunelle for exercising his First Amendment right to petition the courts for redress of grievances (Id., Count 4, ¶¶227-231); (5) amounted to an unlawful and unconstitutional taking of property without just compensation (Id., Count 5, ¶¶ 232-235); entailed unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments (Id., Count 6, ¶¶ 237-245); and (7) constituted malicious prosecution in violation of the plaintiff's constitutional rights (Id., Count 8, ¶¶ 253-257). Brunelle further alleges that the City of Scranton is legally responsible for the actions of its officers and employees because by failing to adequately train and oversee the actions of these employees, the city effectively fostered a custom, policy and practice of illegal discrimination. (Id., Count 7, ¶¶ 246-252.) Brunelle's complaint then asserts a series of pendent state-law tort claims, including allegations of malicious prosecution (Id., Count 9, ¶¶258-262), abuse of process (Id., Count 10, ¶¶ 263-267), and tortious interference with existing contractual relations (Id., Count 11, ¶¶ 268-273.)

The defendants moved to dismiss seven of the claims (Doc. 30), arguing that Brunelle had failed to state a claim upon which relief could be granted with respect

to his claims of equal protection, unlawful taking, malicious prosecution, abuse of process, and interference with contractual relations.  By report and recommendation, we recommended that the motion be denied with respect to all claims with the exception of Brunelle's takings claim in Count 5.  (Doc. 73.)  The district court adopted that recommendation, and the parties subsequently consented to Magistrate Judge jurisdiction and the case was referred to the undersigned for all further proceedings.  (Docs.76, 82.)

Defendants Fowler and Hinton have now filed a second dispositive motion, a partial motion for summary judgment, this time arguing that they are entitled to qualified immunity from Brunelle's federal claims.  (Doc. 86.)  The defendants argue that a slew of actions taken with respect to Brunelle's properties, including warrantless searches, demolition orders, condemnation orders, the issuance of stop-work orders and citations, and other official actions were both lawful and reasonable under the circumstances and did not violate clearly established law of which either would have known.  (Id.)  Brunelle disagrees, arguing that there is substantial evidence to show that these individual city officials targeted him specifically for reasons that were retaliatory and reflected a personal animus towards him, and which bore no relation to the actual state of his properties.  Brunelle testified extensively at his deposition regarding these allegations and included a list of more than 100 citations that had been issued to him with respect to his properties, as well as a

"partial list" setting forth 56 of the citations having been adjudicated as not guilty or otherwise in Brunelle's favor. (Doc. 92, Ex. A.) Brunelle further testified at length during his deposition, revealing a basic, fundamental, factual disagreement with the defendants concerning their claims regarding both the state of his properties, and their motive, intent and state of mind relative to the actions that they took.

Notably, the defendants – who are seeking summary judgment in their favor – have offered little by way of evidence in support of the motion and have submitted no exhibits or other evidence to support their arguments. Instead, they have relied generally upon allegations in the amended complaint, representations contained in Hinton's deposition, or representations made by Brunelle himself acknowledging the purported reasons that he was given for the citations, condemnations, and work orders that were issued with respect to his properties. This reliance upon their purported justifications, however, is misplaced since Brunelle presents countervailing evidence which suggests that these justifications were pretextual and designed to conceal discriminatory animus. Thus, often the evidence cited by the defendants provides only limited support for their factual assertion and, in any event, is frequently disputed by Brunelle's own testimony.

Upon consideration of the motion, we conclude that with one exception discussed more fully below the motion for summary judgment must be denied at this time because the record is replete with disputed issues of fact relevant both to the

defendants' motivations for their conduct, and the defendants' arguments and assertions regarding the reasons for their actions.

## II.    <u>STANDARD OF REVIEW</u>

Defendants Hinton and Fowler have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," <u>Id.</u>, and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, 702 F. Supp. 2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. <u>Id.</u> at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown

that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.

Moreover, a party who seeks to resist summary judgment by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Similarly, it is well-settled that "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . . , an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982).  Likewise, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citation omitted).  Indeed, summary judgment is appropriate if the non-moving party responds only with merely colorable, conclusory, or speculative

evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the non-moving party, and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court "must consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

This principle applies with particular force to factual disputes which relate to matters of motive or intent.  In this regard, it is well-settled that: "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)." Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992).

## III.  DISCUSSION

The defendants' motion for summary judgment is limited to arguing that Defendants Hinton and Fowler are entitled to qualified immunity from Brunelle's federal civil rights claims.  As support for their motion, the defendants contend that the actions that they each took with respect to searching Brunelle's properties without a warrant, issuing citations, stop-work orders, condemnation notices, and other sanctions against Brunelle or his properties were lawful, and that no reasonable city housing inspector on their position would have believed or known that they were

violating clearly established federal law through their official actions. They also seem to renew their arguments that the Court has previously considered, and rejected, regarding the adequacy of Brunelle's claims. We previously concluded that with one exception Brunelle's claims were adequately pled and our review of the deposition testimony in this case makes it abundantly clear that nearly every one of the factual and legal arguments the defendants make in their motion are mired in factual disputes and therefore not amenable to summary judgment.

As far as evidentiary support for their qualified immunity argument, the defendants refer generally to deposition testimony of Patrick Hinton and Alexander Brunelle, which in most cases does little more than refer to the alleged basis for the sanctions and other enforcement action that the defendants took. Our review of the deposition testimony itself reveals that there is not just marginal disagreement between Brunelle and the defendants regarding the official sanctions levied, but a fundamental dispute over whether many or any of the defendants' actions were even based on actual, genuine facts, or were instead motivated entirely by the defendants' animus towards Brunelle, and retaliation for another lawsuit that he had initiated.[3]

---

[3]  Examples of the disputes in the record abound, but by way of example, the defendants cite to several pages of Brunelle's deposition testimony as support for the assertion that Brunelle had received a formal notice of condemnation and a permit denial for the property located at 210-212 Prospect Avenue in Scranton. (Doc. 88, at p. 4.)  But this testimony states only that Brunelle did, in fact, receive the notice.  Nothing in Brunelle's testimony can even remotely be read to suggest that he concurs in the defendants' action, or in the factual basis proffered for the

Importantly for purposes of the pending motion for partial summary judgment, the record also makes clear that the parties sharply disagree about the individual defendants' motivation and intent relative to their conduct. Brunelle has cited to an array of witness testimony to support his contention that Defendants Hinton and Fowler were explicitly motivated by an improper purpose, namely, animus towards him and his brother. This evidence includes testimony by multiple witnesses who claim to have heard the defendants explicitly admit to the retaliatory animus that motivated them. He thus claims that the defendants fabricated reasons to sanction him and his properties, not because there were legitimate code violations, but because the defendants did not like him and wanted to retaliate against him for other disputes or litigation Brunelle had with the city and its inspectors.

The defendants do not really contest Brunelle's evidence regarding their subjective motivation or express dislike for him; instead, the defendants repeat their argument that the actions that they each took were reasonable and did not violate

---

citation he received. Moreover, it is obvious that Brunelle maintains that the entire sanction was trumped up and pretextual cover for discriminatory or retaliatory motive. Thus, Brunelle was asked "in that formal notice were you advised as to the reasons the property was condemned?" (Doc. 89-3, Dep. of Alexander Brunelle 149:24-150:1.) Brunelle acknowledges that he was but then notes that, the charge that the property was a fire hazard "is just silly. [Fowler] may have stated that in her letter, but there would be no evidentiary basis for that whatsoever to my knowledge." Similar examples may be found throughout much of Brunelle's deposition testimony outlining the scores of sanctions that have been levied against him by the individual defendants in this case and noting that a great many of those cases resolved in Brunelle's favor. (Doc. 92, Ex. A, passim.)

any clearly established law. But the defendants' argument assumes that their version of the facts regarding their motive and intent, as well as their views concerning the condition of Brunelle's properties or the legitimate reasons proffered for their conduct is undisputed.

It is not.

In our judgment, the factual disputes that pervade the record regarding the substance of Brunelle's constitutional claims, and about the defendants' subjective motivations behind their treatment of Brunelle, make qualified immunity inappropriate with the one exception of Brunelle's Fourth Amendment claim relating to a single warrantless entry into a property on South Sumner Street in Scranton.

The doctrine of qualified immunity shields governmental officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, -- U.S. -- , 136 S. Ct. 305, 308 (2015). The qualified immunity inquiry has two parts. The first asks whether the plaintiff has alleged sufficient facts to "make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The second question is "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Id. (internal quotation marks omitted). A court may "exercise [its] sound discretion in deciding which of the two

prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." Pearson, 555 U.S. at 236.

A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (alterations in original). "If no case speaks directly to the legality of the officer's conduct, the challenged conduct [needs] to be such that reasonable officers in the defendant['s] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful." Geist v. Ammary, 40 F. Supp. 3d 467, 485 (E.D. Pa. 2014) (citing Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d Cir. 1994)) (internal quotations omitted).

Qualified immunity is intended to immunize governmental officials from liability except in those cases where it would be objectively unreasonable for them to believe that their conduct was warranted. As the Third Circuit has observed, "[t]hat threshold is a high one." Thompson v. Howard, 679 F. App'x 177, 181 (3d Cir. 2017). The doctrine exists because "it is inevitable that [government] officials will in some cases reasonably but mistakenly" believe that their actions are justified and permissible. Anderson, 483 U.S. at 641. Qualified immunity thus "gives ample room for mistaken judgments" and "protect[s] all but the plainly incompetent or

those who knowingly violate the law." <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248, 254 (3d Cir. 2010) (internal quotation marks and citations omitted). For that reason, qualified immunity applies unless it is "beyond debate" that an official acted unreasonably, <u>Mullenix</u>, 136 S. Ct. at 309, and unless "every reasonable official would [have understood] that what he [was] doing violate[d]" the right at issue. <u>Reichle v. Howards</u>, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and citation omitted) (first alteration in original). As the Supreme Court clarified, while "[w]e do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." <u>Mullenix</u>, 136 S. Ct. at 308.

A court's qualified immunity analysis should also be an objective inquiry "into the reasonableness of the official action." <u>Anderson</u>, 483 U.S. at 645. But the Supreme Court has recognized that when facts relevant to the defense are in dispute, "discovery may be necessary before [a] motion for summary judgment on qualified immunity grounds can be resolved." <u>Id.</u> at 646 n.6. A court may require a plaintiff to provide "specific nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for [ ] summary judgment." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998). In cases where a plaintiff fails to provide particularized facts to oppose a government

official's assertion of qualified immunity, a motion for summary judgment should be granted.  Brown v. Armenti, 247 F.3d 69, 78 (3d Cir. 2001).

The existence of factual disputes, supported by evidence in the record, may render qualified immunity unavailable in some cases.  Thus, "although qualified immunity is a question of law determined by the court, when qualified immunity depends on disputed issues of material fact, those issues must be determined by the jury."  Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006); see also Johnson v. Jones, 515 U.S. 304, 313 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.").

Thus, when questions about the application of qualified immunity turn on issues of motive that are themselves subject to dispute, summary judgment on the defense is inappropriate.  Monteiro, 436 F.3d at 405 ("Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor."); see also Mitchell v. Forsyth, 472 U.S. 511, 529 (1985) (improper intent is a pure question of fact); Walker v. Horn, 286 F.3d 705, 710 (3d Cir. 2002); Ansell v. Ross Twp., No. ___, 2012 U.S. Dist. LEXIS 43127 at *80-81, 2012 WL 1038825 at *27 at *80-81 (W.D.

Pa. 2012) ("[I]t should be determined by a jury whether Demarco's true motivation for ejecting Ansell from the meeting was to suppress Ansell's viewpoints.").

When the underlying constitutional violation itself depends on evidence of improper intent or motive, "it is sufficient for the plaintiff to identify affirmative evidence from which a jury could find . . . the pertinent motive in order to survive summary judgment . . . ." Monteiro, 436 F.3d at 405 (quoting Crawford-El, 523 U.S. at 600) (internal quotation marks omitted). Accordingly, where there exist disputed issues of material fact regarding a defendant's improper motive, and where there are disputes issues of material fact regarding the proffered reasons given for the defendants' challenged actions, summary judgment is inappropriate. Id.; see also.

In this case, the plaintiff has presented sufficient evidence to support his claim that the sanctions and other enforcement actions that Fowler and Hinton took with respect to him and his properties lack any reasonable basis and were taken for unlawful malicious and retaliatory purposes.

For example, the plaintiff has alleged that the defendants violated his right to procedural due process guaranteed by the Fourteenth Amendment by condemning properties or units within the plaintiff's properties without affording the plaintiff with a pre-deprivation hearing. The defendants argue that they are entitled to qualified immunity on these procedural due process claims because it is not clear

that a pre-deprivation notice is required in cases involving exigent circumstances, and where a post-deprivation remedy is available to an aggrieved property owner. The defendants maintain that the record shows that they relied on competent evidence that exigent circumstances existed, thus relieving them of any obligation to provide a pre-deprivation hearing.

It has long been settled law that where a state can feasibly provide a pre-deprivation hearing before taking property, it generally must do so. See, e.g., Fuentes v. Shevin, 407 U.S. 67, 80-84 (1972) (hearing required before issuance of a writ allowing repossession of property). It is also true that in some cases involving exigent circumstances requiring officials to act quickly, a pre-deprivation hearing may be deemed unnecessary and in such cases the existence of a post-deprivation remedy may be adequate to protect a property owner's due process interests. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982) (" '[T]he necessity of quick action by the State or the impracticality of providing any predeprivation process'" may mean that a post-deprivation remedy is constitutionally adequate) (quoting Parratt v. Taylor, 451 U.S. 527, 539 (1981); see also Hudson v. Palmer, 468 U.S. 517 (1984) holding that a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the state fails to provide an adequate post-deprivation remedy).

There is no question, therefore, that summary administrative enforcement action may be taken in emergency situations. Where competent evidence allows an official to reasonably believe that an emergency exists, discretionary invocation of emergency procedures will only amount to a constitutional violation if the action is arbitrary or an abuse of discretion. Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 418 (3d Cir. 2008). "Where government officials are faced with a decision in which a failure to act quickly could have serious health consequences, perfection or near perfection is not the standard." Id. at 420.

In this case, however, there is a fundamental factual dispute as to whether the defendants reasonably could have believed that an actual emergency existed, and the plaintiff has maintained that there is no evidence upon which the defendants could have concluded that there was any danger to the life or health of any occupants of his properties. Thus, with respect to the plaintiff's Pittston Avenue apartments and the property on Prospect Avenue, both of which the defendants allegedly condemned because of a lack of egress, Brunelle testified that the properties were condemned at the time he purchased them. (Doc. 92, Ex. 2, Dep. of Alexander Brunelle at 64:22, 146:19.) Brunelle further notes that the properties were released from condemnation in 2012. (Id. at 64:24-65:3, 148:1-4.) Brunelle argues that it strains credulity to believe that the properties would have been released from condemnation if they were, in fact, a safety risk due to lack of egress. We agree that the defendants have

not demonstrated that it was undisputed that some emergent or exigent circumstance arose which would have justified the re-condemnation of these properties without the need for any pre-deprivation process. These factual disputes preclude a finding that the defendants are entitled to qualified immunity on the plaintiff's procedural due process claims.

The defendants make similar arguments with respect to other properties, arguing that Brunelle's properties were condemned because of threats to the health, safety or welfare of residents. Brunelle counters by noting that the defendants engaged in a pattern of targeted enforcement against him, and repeatedly made statements which indicated that their efforts to sanction him and condemn his properties were not taken out of a concern for the residents' welfare, but because they had a vendetta against him. For example, a City of Scranton mechanical inspector named Sheldon Roberts testified that Fowler "used to get very excited when she was going out to do something to [Brunelle's] properties. She got off on it, because she just hated the man so much." (Doc. 92, Ex. 6, Dep. of Sheldon Roberts at 96:1-3.) He testified that Fowler boasted to people in the office that "she enjoyed it more than sex." (Id. at 96:4-11.) He further testified that Fowler repeatedly made statements to suggest she was targeting Brunelle, referring to him as her "buddy … in a sarcastic kind of way. You know, she's going up to one of her buddy's properties to, you know, condemn it or violate them for something." (Id. at

96:19-22.) Roberts noted that no other city inspector made any similar comments about Brunelle or his properties. (Id. at 97:11-14.) Thus, Brunelle argues that there is evidence that both undermines the defendants' proffered justification for their enforcement actions and would support a finding that these actions were motivated by a vindictive desire to harass and penalize Brunelle for no justifiable reason.

Brunelle has also argued that the defendants targeted him specifically with the posting of "failure to pay rental registration fees/intent to condemn" signs on his properties, in a manner that was frequently unreasonable and motivated by retaliatory animus. (Am. Compl., at ¶¶ 104-105, 112-155, 122-125, 212.) Although Hinton has testified that inspectors did this to numerous landlords in Scranton based upon a city ordinance, (Doc. 92, Ex. 5, Dep. of Patrick Hinton at 116-119), Sheldon Roberts testified that Brunelle was subjected to specific targeting, (Id., Ex. 6, Dep. of Sheldon Roberts at 104:2-10), and Brunelle testified specifically that he was the only landlord in Scranton subjected to this practice, (Id., Ex. 2, Dep. of Alexander Brunelle at 61:13-21.) This discrepancy in the record causes the defendants' defense of the practice in this case to be in dispute, and further raises questions regarding the defendants' actual motivation for posting the notices. The defendants claim it was a straightforward enforcement of the city code, whereas Brunelle and Roberts have suggested that this this justification is mere pretext for an unlawful pattern of retaliatory conduct by the defendants. This dispute in the record regarding the

factual basis for the defendants' actions, and their allegedly unlawful motives for targeting Brunelle, make qualified immunity inappropriate.

Our analysis is similar with respect to Brunelle's claims that for years defendant Fowler targeted the plaintiff with meritless citations to the properties. (Am. Compl. ¶ 203.)  Brunelle claims that he has been subjected to a near decade-long campaign of malicious and retaliatory prosecution by Fowler, and he has submitted an affidavit containing a detailed listing of these citations for a variety of alleged violations, all of which either were adjudicated in his favor or were otherwise dismissed.  (Doc. 92, Ex. A.)  The defendants argue that generally city officials may reasonably issue citations for legitimate code violations, and hence they should be granted qualified immunity from these claims.  However, the fact that so many of these citations were dismissed or adjudicated in Brunelle's favor raises significant questions about whether the citations were, in fact, being issued for a proper purpose or even had a legitimate factual basis.  As with the claims discussed above, the factual basis for the defendants' enforcement actions, and their motives for issuing the citations, are squarely in dispute and preclude the Court from determining that they are entitled to qualified immunity for these malicious prosecution and retaliation claims.

Brunelle has pointed to other instances of allegedly arbitrary and irrational treatment of him and his properties that he claims violated his constitutional rights,

and which call into question the defendants' claim that they were merely enforcing Scranton's building and housing codes. For example, Brunelle testified that the defendants unlawfully ordered the Lackawanna Avenue property to be demolished, and he has alleged that Hinton did so out of personal malice towards him and not for any legitimate reason. He notes that the defendants conducted no inspection of the property prior to ordering it to be razed, and that after Hinton issued the order a city engineer and a third-party inspector agreed with Brunelle's own structural engineer that the building was structurally sound. (Doc. 92, Ex. 5, Dep. of Patrick Hinton at 47:6-22.) Brunelle testified that the building was in exactly the same condition that it had been in at the time he purchased it, but it was not slated for demolition until after he acquired it. (Doc. 92, Ex. E, Feb. 1, 2018 Dep. of Alexander Brunelle at 52:24-53:3.) The defendants claim they are entitled to qualified immunity for claims relating to this incident, based solely on Hinton's testimony about his alleged concerns that the building had suffered serious damage from an earlier fire. (Doc. 92, Ex. 5, Dep. of Patrick Hinton at 10-14.) The discrepancy in the parties' evidence regarding this incident, and regarding Hinton's alleged motivation for ordering the demolition without inspection, make qualified immunity inappropriate at this time.

We thus conclude that with respect to many of Brunelle's claims sharp factual disputes regarding the legitimacy of the defendants' actions and their motives in subjecting Brunelle and his properties to scores of citations, condemnations, and

other sanctions, make this case unsuited for summary judgment or a finding that the defendants are entitled to qualified immunity.  We do, however, reach a different conclusion with respect to one discrete incident regarding a warrantless entry into one of the plaintiff's properties on South Sumner Avenue.  The defendants argue that they are entitled to qualified immunity with respect to their warrantless entry into this property because a man who held himself out to be a tenant of the property consented to their request to conduct an inspection.  (Doc. 88, at 12; Doc. 92, Ex. 5, Dep. of Patrick Hinton at 150, 160.)

There appears to be no dispute that with respect to this search the defendants had been granted permission to enter by a man claiming to reside there.  While Brunelle claims that the person was not, in fact, a tenant, (Doc. 92, Ex. 2, Dep. of Alexander Brunelle at 304-306), there is no dispute that this individual had represented that he was a tenant and consented to the defendants' entry into the property, and Brunelle has offered no evidence to show that the defendants' reliance on the tenant's consent was unfounded or unreasonable.[4]  The law is well-settled that even in the stricter criminal context, where officials obtain the voluntary consent of an occupant who is reasonably believed to share authority over property, a

_____

[4]  Moreover, the evidence shows that the individual who consented to the search not only represented himself to be a tenant to the inspectors, but he signed a permission for right of entry form, and further informed a local magistrate judge that he was a tenant of the property.  (Doc. 92, Ex. 5, Dep. of Patrick Hinton at 150, 166.)

warrantless search is valid under the Fourth Amendment. <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 186 (1990); <u>United States v. Stabile</u>, 633 F.3d 219 (3d Cir. 2011). Notably, this Fourth Amendment benchmark is a wholly objective test, and eschews any inquiry into subjective motivation. As the Supreme Court has observed: "As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment ... "warrant a man of reasonable caution in the belief " ' that the consenting party had authority over the premises." <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 188, 110 S. Ct. 2793, 2801, 111 L. Ed. 2d 148 (1990). Therefore, the disputed issues of subjective motivation which preclude summary judgment on Brunelle's other legal claims simply are inapplicable here. Accordingly, because no reasonable city inspector would believe that he or she would be in violation of the Fourth Amendment for obtaining the express consent of a person claiming to be a resident of a property before entering without a warrant, we agree with the defendants that they are entitled to qualified immunity on any of Brunelle's claims based upon the warrantless entry into the South Sumner Street property.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, we conclude that the defendants' partial motion for summary judgment on qualified immunity grounds must be denied in all respects,

with the exception of the plaintiff's claim regarding the defendants' entry into the South Sumner property.

      An appropriate Order follows.

                            */s/  Martin C. Carlson*
                            Martin C. Carlson
                            United States Magistrate Judge

DATED: April 12, 2019